B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>White Wilson Medical Center, PA | **DEFENDANTS**<br>Insbank, Itria Ventures LLC, Austin Business Finance LLC d/b/a Backd, Newco Capital Group VI LLC, Capybara Capital LLC, Mako Funding LLC, White Wilson Management Services LLC and TKR Real Estate Holdings LLC |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Alberto F. Gomez, Jr. and Michael C. Markham<br>Johnson Pope Bokor Ruppel & Burns LLP<br>400 N Ashley Dr #3100<br>Tampa, FL 33602 - Phone 813-225-2500 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Complaint for Temporary Injunctive Relief purusant to Section 105(a) of the Bankruptcy Code and 28 USC Section 1334, and Bankruptcy Rules 7001(7) and 7065.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

**B104 (FORM 104) (08/07), Page 2**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES ||||
|---|---|---|---|
| NAME OF DEBTOR<br>White Wilson Medical Center, PA | | BANKRUPTCY CASE NO.<br>25-40486-KKS ||
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Florida | | DIVISION OFFICE<br>Tallahassee | NAME OF JUDGE<br>Judge Specie |
| RELATED ADVERSARY PROCEEDING (IF ANY) ||||
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Alberto ("Al") F. Gomez, Jr. ||||
| DATE<br><br>October 20, 2025 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Alberto ("Al") Gomez, Jr. ||

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

In re:

WHITE WILSON MEDICAL CENTER, P.A.,   Case No. 25-40486
                                      Chapter 11
     Debtor.
_____/

WHITE WILSON MEDICAL CENTER, P.A.

     Plaintiff,

v.

INSBANK, ITRIA VENTURES LLC, AUSTIN
BUSINESS FINANCE LLC d/b/a BACKD,
NEWCO CAPITAL GROUP VI LLC,
CAPYBARA CAPTIAL LLC, MAKO
FUNDING LLC, WHITE WILSON
MANAGEMENT SERVICES LLC and
TKR REAL ESTATE HOLDINGS LLC

     Defendants.
_____/

**VERIFIED COMPLAINT FOR TEMPORARY INJUNCTIVE RELIEF**

Plaintiff, WHITE WILSON MEDICAL CENTER, P.A. ("Debtor" or "Plaintiff"), by and through the undersigned counsel, sues InsBank, Itria Ventures LLC ("Itria"), Austin Business Finance LLC d/b/a Backd ("Backd"), Newco Capital group VI LLC ("Newco"), Capybara Capital LLC ("Capybara"), Mako Funding LLC ("Mako"), White Wilson Management Services LLC ("WWMS"), and TKR

Real Estate Holdings LLC ("TKR") (collectively, the "Defendants") and seeks injunctive relief during the pendency of this Chapter 11 case prohibiting the commencement or continuation of all civil actions (including state, federal, and arbitration actions) and collection activities against White Wilson Association PA ("WWA"), Emerald Coast Management Company LLC ("ECMC"), Alpha Integrated Health, LLC ("AIH"), Kenneth Persaud, MD ("Dr. Persaud") and Krishan Nagda, MD ("Dr. Nagda") (collectively, the "Affiliated Entities") through confirmation of a plan of reorganization, including, but not limited to, enjoining the prosecution of: (i) state court action filed in Texas styled *Austin Business Finance LLC vs. Emerald Coast Management Company LLC, White Wilson Association, PA, Kenneth T. Persaud and Krishan Nagda* (the "Pending Action"), (ii) all unknown but currently pending actions against the Affiliated Entities and (iii) any actions not yet filed against the Affiliated Entities.

## Jurisdiction and Venue

1. This Court has jurisdiction over this adversary proceeding, pursuant to 28 U.S.C. §§ 157 and 1334, in that it arises in and relates to the Chapter 11 case pending before this Court filed by the Debtor.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

3. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

2

4. The statutory predicates for the relief sought herein are section 105(a) of the Bankruptcy Code[1] and 28 U.S.C. § 1334 and Bankruptcy Rules 7001(7) and 7065.

## The Parties

5. Plaintiff is the debtor in the above-captioned bankruptcy case. Plaintiff is a Florida professional association providing multispecialty medical services at twelve locations throughout Northwest Florida, employing more than 290 individuals.

6. WWA is a Florida limited liability company and the Debtor's parent company.

7. ECMC is a Florida limited liability company and an affiliate of the Debtor[2].

8. AIH is a Florida limited liability company and an affiliate of the Debtor.

9. Dr. Persaud is the Debtor's Chief Executive Officer and a key executive officer necessary to the Debtor's continuing operations and reorganization efforts.

10. Dr. Nagda is the Debtor's Chief Technology Officer and a member of its Board of Directors, with critical operational and leadership responsibilities essential to the reorganization effort.

---

[1] All references to the "Bankruptcy Code" are to the applicable section of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* All references to a "Bankruptcy Rule" or the "Bankruptcy Rules" are to the applicable rule of the Federal Rules of Bankruptcy Procedure.
[2] Dr. Persaud and Dr. Nagda own approximately eighty percent (80%) of the membership interests in ECMC.

3

11. Defendant InsBank is a Tennessee state charted bank that extended financing to the Debtor and its affiliate, ECMC, pursuant to a Revolving Credit and Term Loan Security Agreement dated December 29, 2023 ("Loan Agreement").

12. InsBank asserts secured interests in the Debtor's cash, bank accounts, and accounts receivable.

13. Defendant Itria is a Delaware limited liability company that allegedly purchased $630,000 of the Debtor's receivables for the purchase price of $500,000 pursuant to a Receivables Sale Agreement dated August 8, 2024 (the "Itria Agreement").

14. Itria asserts secured interests in the Debtor's cash, bank accounts, and accounts receivable.

15. Defendant Backd is a Texas limited liability company that allegedly purchased $1,240,000.00 of the Debtor's receivables for the purchase price of $1,000,000.00 pursuant to a Future Receivables Sale Agreement dated September 4, 2024 (the "Backd Agreement").

16. Backd did not record a UCC-1 financing statement and is considered a general unsecured creditor in this Chapter 11 case.

17. Defendant Newco is a New York limited liability company that allegedly purchased $1,056,000.00 of the Debtor's receivables for the purchase price

of $800,000.00 pursuant to a Revenue Purchase Agreement dated February 11, 2025 (the "Newco Agreement").

18. Newco did not record a UCC-1 financing statement and is considered a general unsecured creditor in this Chapter 11 case.

19. Defendant Capybara is a Florida limited liability company that allegedly purchased $931,000.00 of the Debtor's receivables for the purchase price of $700,000.00 pursuant to a Sale of Future Receipts Agreement dated February 11, 2025 (the "Capybara Agreement").

20. Capybara did not record a UCC-1 financing statement and is considered a general unsecured creditor in this Chapter 11 case.

21. Defendant Mako is a Florida limited liability company that allegedly purchased $731,500 of the Debtor's receivables for the purchase price of $550,000.00 pursuant to a Sale of Future Receipts Agreement dated August 11, 2025 (the "Mako Agreement").

22. Mako did not record a UCC-1 financing statement and is considered a general unsecured creditor in this Chapter 11 case.

23. Defendant WWMS is a Florida limited liability company that extended financing to the Debtor in the amount of $1,650,000.00 pursuant to a Loan Agreement dated January 25, 2025 ("WWMS Agreement").

24. Defendant TKR is a Florida limited liability company that extended financing to the Debtor in the amount of $100,000.00 pursuant to a Loan Agreement dated March 20, 2024 ("TKR Agreement").

## The Debtor's Business and the Chapter 11 Filing

25. On October 3, 2025, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

26. The Debtor is a multi-specialty medical practice and clinic that was formed in 1952 by Dr. Henry C. White and Dr. Joseph C. Wilson. Today, the Debtor offers more than 20 specialties of medicine. The Debtor is the largest private physician group providing primary care and outpatient services on the Emerald Coast of Florida.

27. The Debtor consists of approximately 58 medical providers and 232 staff members as part of its medical practice. The Debtor is committed to meeting the community's need for quality health care in the area with a broad focus of medical specialties such as Audiology, Cardiology, Gastroenterology, Medicine, Internal Medicine, Neurology, Radiology, Surgery, Long Term Care, Pediatrics and Immediate Care. Additionally, the Debtor offers convenient clinical locations in Fort Walton Beach, Crestview, DeFuniak Springs, Destin, Navarre and Niceville.

28. The Debtor employs more than 290 individuals and provides essential medical care across the Emerald Coast. The ability to maintain stability and continuity is critical to patient safety, employment, and the public interest.

29. Over the past several quarters, the practice has experienced a significant decline in cash flow, primarily stemming from reimbursement delays, a reduction in patient volumes, and rising operational costs associated with staffing, medical supplies, and facility overhead.

30. Prior to the filing of the bankruptcy petition, the Debtor borrowed funds under various merchant advance loans ("MCA Loans") with extraordinarily high-interest rates in order to sustain operations and cover working capital shortfalls while continuing to provide clinical services and addressing cash-flow issues. The cumulative effect of these MCA Loans has resulted in unsustainable monthly debt service requirements ranging on average between $400,000 to $450,000 per month. The combination of reduced revenue streams and escalating interest payments made it increasingly difficult for the Debtor to meet its financial obligations to vendors, employees, and clinical partners in a timely manner.

31. Despite diligent efforts to restructure existing debt, negotiating with creditors, and implementing internal cost-saving measures, the Debtor was unable to achieve financial stability without court protection.

32. The substantial interest rates of the MCA Loans, coupled with daily and weekly ACH payments crippled the Debtor. The Debtor was unable to generate settlement revenues to pay its independent contractors and other vendors, who are the lifeblood of the company.

33. The Debtor filed the Chapter 11 case to preserve: (a) the going concern value of the business, (b) its relationships with employees, customers, and vendors, and (c) its reputation in the community.

34. The Debtor's reorganization efforts depend upon the continued active leadership of its executive team, including Dr. Persaud and Dr. Nagda, whose professional and managerial duties are indispensable to maintaining patient care, operations, and creditor confidence.

35. Since the Petition Date, Dr. Persaud and Dr. Nagda have been required to expend and going forward will be required to expend a significant amount of time: (a) attending the initial debtor interview, the Section 341 meeting of creditors, and hearings; (b) responding to requests for information and documents from the Office of the United States Trustee, and creditors; (c) communicating with creditors, employees, and customers regarding the Chapter 11 case, (d) preparing cash collateral budgets; (e) preparing monthly operating reports; (f) negotiating adequate protection with secured creditors; (g) assisting with the inspection and valuation of assets; (h) negotiating plan

treatment with creditors; and (i) formulating, filing, and confirming a plan of reorganization. These additional duties did not exist prior to the Petition Date. In order to ensure the viability of the Debtor during the pendency of this Chapter 11 case, and satisfy the obligations to the Court, the Office of the United States Trustee, creditors, employees, and customers.

36. Dr. Persaud and Dr. Nagda's continued leadership is indispensable to on-going operations, plan formulation, DIP compliance, and ongoing physician and creditor negotiations.

37. Litigation or enforcement actions against Dr. Persaud, Dr. Nagda, or any of the Affiliated Entities would divert essential management time and resources, jeopardizing patient care and the Debtor's reorganization efforts.

38. Additionally, the Debtor has filed a Motion for Final Order Authorizing the Debtor to Obtain Postpetition Financing and Grant Liens (Doc. No. \_) ("DIP Funding Motion"), which seeks to borrow $1,000,000 from ECMC, one of the Affiliated Entities. The terms of the DIP financing provide funds which are necessary for operations are being advanced on very favorable terms. The Affiliated Entities are sources of current funding and potential funding in the future. Litigation and claims asserted against Dr. Persaud, Dr. Nagda, and the other Affiliated Entities, will interfere with the proposed DIP financing contemplated by the DIP Funding

Motion and jeopardize the Debtor's ability to access to needed sources of financing that enable the Debtor to propose a viable Chapter 11 plan that can be confirmed.

### InsBank

39. Pursuant to the Loan Agreement, InsBank extended a $1,500,000 revolving line of credit and a $4,000,000 term loan to WWMC and ECMC.

40. Drs. Persaud and Nagda personally guaranteed the obligations and pledged personal assets including their primary residences and investment accounts.

41. On or about October 7, 2025, InsBank set off approximately $2,800,000 from deposit and investment accounts owned by ECMC and Drs. Persaud and Nagda, which were pledged as collateral to secure the Debtor's obligations[3].

42. On or about October 7, 2025, InsBank served ECMC, AIH, Dr. Persaud, and Dr. Nagda with a Notice of Default and Acceleration of the Loan Agreement demanding immediate payment of $4,308,420.92.

### Itria Ventures LLC

43. Itria asserts claims against the Debtor pursuant to the Itria Agreement.

44. The Itria Agreement purports to pledge the Debtor's accounts receivable and deposit accounts as collateral and requires regular ACH withdrawals until the purchased or advanced amount is repaid.

---

[3] Dr. Persaud and Dr. Nagda assert they have subrogation rights with respect to the set-off, both under §509 and rights of equitable subrogation.

10

45. Dr. Persaud and Dr. Nagda personally guaranteed performance of the Intria Agreement.

## Austin Business Finance LLC d/b/a Backd

46. On or about September 6, 2024, the Debtor entered into the Backd Agreement, an Austin-based finance company.

47. The Backd Agreement purports to sell a specified percentage of the Debtor's future revenues in exchange for an advance of funds.

48. The agreement includes a personal guaranty by Dr. Persaud and Dr. Nagda.

49. On or about October 8, 2025, Backd filed a lawsuit against ECMC; WWA, Dr. Persaud and Dr. Nagda in the 480th Judicial District Court of Williamson County, Texas for breach of contract and breach of guaranties.

## Newco Capital Group VI LLC

50. On or about February 11, 2025, the Debtor entered into the Newco Agreement with Newco.

51. Pursuant to this agreement, Newco advanced $5,000,000 to the Debtor in exchange for the purported right to receive $1,056,000 of the Debtor's future receipts.

52. Dr. Persaud and Dr. Nagda executed personal guaranties of the obligations to Newco.

11

### Capybara Capital LLC

53. On or about February 13, 2025, White Wilson and the Debtor executed a Capybara Agreement.

54. The Capybara Agreement purports to provide for the transfer of a percentage of the Debtor's future receipts in exchange for a cash advance, subject to daily or weekly ACH withdrawals and reconciliation based on actual revenue.

### Mako Funding USA LLC

55. On or about August 19, 2025, the Debtor entered into the Mako Agreement with Mako.

56. The Mako Agreement purports to provide a purchase price of $550,000 in exchange for $731,500 of future receipts.

57. The agreement identifies Dr. Kenneth Persaud and Dr. Krishan Nagda as personal guarantors.

### White Wilson Medical Services, LLC

58. The Debtor also entered into WWMS Agreement with WWMS, purportedly secured by the Debtor's medical accounts receivable and deposits in the amount of $1,650,000.00.

59. The obligation is personally guaranteed by Dr. Kenneth Persaud and Dr. Krishan Nagda.

### TKR Real Estate Holdings LLC

60. On information and belief, the Debtor and its Affiliated Entities are purportedly obligated to TKR under the TKR Agreement.

61. Dr. Persaud and Dr. Nagda personally guaranteed the TKR Loan.

### Public Interest and Balance of Equities

62. The Debtor's continued operation is critical to the Emerald Coast community. It is the largest private medical employer in Northwest Florida, providing essential primary and specialty care in areas such as cardiology, pediatrics, surgery, neurology, gastroenterology, and long-term care. Any interruption in its operations would cause severe harm to patients, employees, and vendors across the region. The injunction requested merely preserves the status quo and ensures that patient care and employment are not disrupted. Defendants' rights are preserved and unimpaired.

### Limited Duration and Preservation of Rights

63. The injunction sought is temporary and will remain in effect only through the Effective Date of a confirmed Chapter 11 Plan. Upon the Effective Date, the injunction shall terminate automatically without prejudice to Defendants' rights to enforce their claims consistent with the confirmed plan. Defendants' liens, claims, and remedies are preserved and unimpaired; they are merely suspended to protect the estate during the reorganization period.

## COUNT I – INJUNCTIVE RELIEF

64. The allegations of paragraphs 1–84 are incorporated herein by reference.

65. This is an action for injunctive relief pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065.

66. This complaint seeks temporary and preliminary relief through the entry of a preliminary injunction enjoining the Defendants from commencing or continuing any civil actions or collection activities against the Affiliated Entities for the duration of the Debtor's bankruptcy case, up to and including the entry of a final order confirming the Debtor's plan. It also seeks to enjoin Backd from prosecuting the Pending Action against the Affiliated Entities pending confirmation of the Debtor's plan of reorganization.

67. The Debtor has a substantial likelihood of success in achieving a successful reorganization, particularly if it has the assistance of Dr. Persaud and Dr. Nagda. The Debtor intends to propose a comprehensive plan of reorganization and negotiate in good faith with its creditors to resolve the disputes and claims asserted in the Pending Action.

68. Failure to enjoin the Defendants from prosecuting the Pending Action as well as all other civil actions or collection activities against the Affiliated Entities

during the pendency of this Chapter 11 case will have catastrophic and potentially fatal effects on the Debtor's ability to reorganize.

69. The Debtor has and will suffer irreparable injury unless the court issues the injunctive relief sought herein. If the Defendants are permitted to continue prosecuting civil actions and collection activities against the Affiliated Entities:

    a. They will be forced to expend additional resources to defend the litigation and collection activities, which will adversely impact her ability to support the Debtor's plan of reorganization.

    b. The pending litigation will distract Dr. Persaud and Dr. Nagda and prevent them from devoting their full attention to the Debtor and the reorganization process during this critical period.

    c. Collection efforts may prevent the Debtor from obtaining access to the DIP Financing.

    d. Their assets may be garnished or frozen preventing them from providing funding or support, if determined necessary or appropriate.

    e. The entire reorganization effort would be in jeopardy, as one or more Defendants may attempt to levy on their assets, which could otherwise fund the plan or support the Debtor's reorganization efforts, if determined necessary or appropriate.

70. In addition, unless the litigation and collection activities are stayed, the Debtor will suffer further irreparable harm because a judgment against Dr. Persaud and Dr. Nagda will effectively be a finding or a judgment against the Debtor, giving rise to contribution and indemnification claims.

71. Allowing the Defendants to prosecute claims against Dr. Persaud and Dr. Nagda will also prejudice the rights of all creditors and result in an unfair distribution of assets to creditors on a first-come-first-serve basis.

72. The potential harm to the Debtor from a failure to grant the injunctive relief sought herein outweighs any potential harm to the Defendants if the injunctive relief is granted. Specifically, the Debtor submits that failure to stay the litigation and collection activities during the pendency of this Chapter 11 case would seriously threaten its reorganization efforts. The only harm that might befall the Defendants is a delay in the prosecution of the litigation. Moreover, the Defendants may file an appropriate proof of claim with this Court to secure any payment to which they may be entitled. Upon information and belief, none of the Defendants are confronting any limitation periods of any kind or nature and will suffer no procedural prejudice.

73. The granting of the injunctive relief sought herein unequivocally advances a significant public interest, that is, in effectuating a successful reorganization of the Debtor as contemplated by the Bankruptcy Code, 11 U.S.C. §§

101 et seq.; in assuring that the legitimate rights of creditors and other parties in interest are protected.

WHEREFORE, Plaintiff respectfully requests that the Court issue a preliminary injunction enjoining the Defendants' prosecution against ECMC, WWA, Dr. Persaud and Dr. Nagda of the Pending Action during the pendency of this Chapter 11 case pending confirmation of the plan of reorganization (as may be amended from time to time) and provide such other and further relief as may be just and proper.

Dated: October 20, 2025

JOHNSON POPE BOKOR
 RUPPEL & BURNS, LLP

/s/ Alberto F. Gomez, Jr.
Alberto ("Al") F. Gomez, Jr. (FBN: 784486)
Michael C. Markham (FBN: 768560)
400 N Ashley Drive, Suite 3100
Tampa, Florida 33602
Telephone: (813) 225-2500
Email: al@jpfirm.com
          mikem@jpfirm.com
Attorneys for Debtor

## VERIFICATION

I, Dr. Kenneth Persaud, being duly sworn, declare under penalty of perjury that I am the Chief Executive Officer of White Wilson Medical Center, P.A., and that the foregoing Verified Complaint is true and correct to the best of my knowledge, information, and belief.

Dated: 10/17/25

Kenneth Persaud, M.D.
Chief Executive Officer
White Wilson Medical Center, P.A.

I, Dr. Krishan Nagda, being duly sworn, declare under penalty of perjury that I am the Chief Technology Officer of White Wilson Medical Center, P.A., and that the foregoing Verified Complaint is true and correct to the best of my knowledge, information, and belief.

Dated: 10/20/2025

Krishan Nagda, M.D.
Chief Technology Officer
White Wilson Medical Center, P.A.